*Notice: This order is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| In the Disciplinary Matter Involving | ) |
| | )   Supreme Court No. S-19117 |
| | ) |
| BENJAMIN CRITTENDEN, | )   ABA File Nos. 2023D050, 2023D052, |
| Respondent. | )   2023D054, 2023D056, 2023D057, |
| | )   2023D073, 2023D085, 2023D089, |
| | )   2023D090, 2023D136, 2023D141, |
| | )   2023D165, 2023D188, 2023D202, |
| | )   2024D043, and 2024D049 |
| | )   ABA Member No. 0511098 |
| | ) |
| | )   **Order** |
| | ) |
| | )   Order No. 122 – August 30, 2024 |

Before: Maassen, Chief Justice, and Borghesan, Henderson and Pate, Justices. [Carney, Justice, not participating.]

Bar Counsel of the Alaska Bar Association and attorney Benjamin Crittenden, through counsel, entered into a stipulation for discipline by consent that would result in Crittenden's disbarment. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so as well. The facts of Crittenden's misconduct are set out in the Stipulation for Discipline by Consent Pursuant to Alaska Bar Rule 22(h), attached as an appendix.[1] We take these facts as

---

[1] The stipulation has been lightly edited, primarily to obscure client identities.

true, and we apply our independent judgment to the appropriateness of the recommended sanction.[2]

Based on the stipulated facts, we agree with the stipulation's legal analysis that disbarment is the appropriate sanction for Crittenden's misconduct. Accordingly:

Benjamin Crittenden is DISBARRED from the practice of law in Alaska to take effect immediately. Pursuant to Alaska Bar Rule 16(c)(3), Crittenden must pay $1,000 to the Alaska Bar Association within 60 days of this order for disciplinary expenses incurred in this matter. Reinstatement proceedings are governed by Alaska Bar Rule 29(c). Before seeking reinstatement Crittenden must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and former clients for any fee arbitration awards that remain unpaid or that are ordered to be paid. Before seeking reinstatement he must also certify to Bar Counsel that he has earned at least 15 credit hours of continuing legal education in the areas of ethics, law office management, and management of law office accounts.

Clerk of the Appellate Courts

*/s/ M. Montgomery*

Meredith Montgomery

cc: Clerks of Court

Distribution:

Email:
Moberly, Michael A.
Driscoll, Louise R.

---

[2]    *In re Brown*, 392 P.3d 474 (Alaska 2017).

In the Disciplinary Matter    )
Involving     )
     )
BENJAMIN CRITTENDEN,    )
     )
   Respondent.    )
_____  )

ABA Member No. 0511098
ABA File Nos. 2023D050, 2023D052, 2023D054, 2023D056, 2023D057, 2023D073, 2023D085, 2023D089, 2023D090, 2023D136, 2023D141, 2023D165, 2023D188, 2023D202, and 2024D043, 2024D049

## STIPULATION FOR DISCIPLINE BY CONSENT
## PURSUANT TO ALASKA BAR RULE 22(h)

1.     Pursuant to Alaska Bar Rule 22(h), Benjamin Crittenden, Respondent, and Louise R. Driscoll, Assistant Bar Counsel, stipulate as follows:

### JURISDICTION AND VENUE

2.     The respondent, Benjamin Crittenden, is a member of the Alaska Bar Association, admitted to practice law by the Supreme Court of Alaska.  Mr. Crittenden practiced law primarily in the Third Judicial District, in Anchorage, Alaska.

3.     On December 5, 2023, Bar Counsel and Mr. Crittenden, through counsel, filed a joint motion for transfer to disability inactive status under Alaska Bar Rule 30.  The parties agreed that placing Mr. Crittenden on disability inactive status would not stay

pending disciplinary matters. The Supreme Court granted the transfer to disability inactive status on December 19, 2023.

4. Mr. Crittenden is subject to the Alaska Rules of Professional Conduct (ARPCs) and to the Alaska Bar Rules, Part II (Rules of Disciplinary Enforcement), giving the Alaska Supreme Court and the Disciplinary Board of the Bar jurisdiction to resolve this matter.

## BACKGROUND FACTS

5. A series of complainants alleged that Mr. Crittenden consistently did not perform legal services for clients, did not return their calls, did not file lawsuits or failed to prosecute lawsuits on their behalf, was dishonest or dissembled when clients asked about the status of their cases, did not disburse funds promptly, failed to account when his clients asked where their money was, and took client money and used it for his own purposes.

### K.A. v. Crittenden, ABA File No. 2023D050

6. Complainant K.A. hired Mr. Crittenden on April 8, 2021, to represent him for injuries sustained in a March 2021 automobile accident.

7. The matter was resolved for policy limits and State Farm issued a check in the amount of $100,000 on June 23, 2022 to the Law Office of Ben Crittenden P.C.

8. K.A. tried to find out when his money would be distributed to him, but he was unable to get a responsive answer.

9. K.A. alleged that Mr. Crittenden wrongfully spent the money out of trust.

10. In November 2022, State Farm sent a check in the amount of $15,445.70 after a calculation of Rule 82 attorney fees. K.A. was unable to get information about how and when money was distributed.

11. On November 22, 2022, attorney Jeffrey Barber e-mailed Mr. Crittenden that K.A. wanted to end the representation by Mr. Crittenden and retain Barber & Associates to pursue distribution of the settlement funds and to handle an uninsured motorist claim.

12. Mr. Barber called and sent e-mails to Mr. Crittenden to seek information about the disbursement of funds.

13. On January 23, 2023, Mr. Crittenden sent a check payable to K.A. in the amount of $25,000. On February 1, 2023, Mr. Crittenden sent a check in the amount of $25,000 to Barber and Associates.

14. Mr. Crittenden never explained why funds received in June 2022 were not promptly disbursed to K.A.

15. Bar Counsel opened the matter for investigation on April 24, 2023.

**Count One**
***Communication***

16. Mr. Crittenden violated Rule 1.4 when he was non-responsive to his client's calls and reasonable requests for information.

**Count Two**
*Safekeeping Property*

17.     ARPC 1.15(d) states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the funds or property.

18.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly distribute settlement funds owed to his client and when he failed to account for the monies he received after the matter settled.

## B.R. v. Crittenden, ABA File No. 2023D052

19.     In March 2017, Complainant B.R. was injured while a passenger in a car that was rear-ended by another driver.

20.     She had sessions of physical therapy which ended in June 2017. Medicare and Medicaid paid for the treatments.

21.     B.R. hired Mr. Crittenden on May 30, 2017 to demand that the insurer of the driver who struck the car reimburse the costs of her treatments. Mr. Crittenden filed a lawsuit on March 20, 2019.

22.     On October 5, 2022, B.R. signed a settlement agreement in the amount of $11,193.37. She was entitled to approximately $7,000 after attorney fees and costs were

deducted. The treatments between April and June 2017 that Medicare covered were to be reimbursed from this settlement.

23. B.R. received services and treatments for other medical issues through Medicare that were unrelated to the accident. She believes that Medicare may have requested reimbursement of non-accident-related treatments from the accident settlement funds and wrongly concluded that she owed money to Medicare for non-accident-related services.

24. Interest on the asserted Medicare debt began to accrue because of the non-payment. Medicare began to send demand letters to B.R.

25. B.R. e-mailed Mr. Crittenden on January 25, 2023, reminding him that she didn't have access to her settlement funds and she didn't think that she should have to pay interest to Medicare. She didn't understand why it was taking so long as she had signed the settlement months earlier.

26. Mr. Crittenden responded on February 20, 2023, apologizing for the delay due to his serious family and health issues. He wrote, "We will make this right. Please do not continue to worry."

27. On March 14, 2023, Medicare advised B.R. that for continued non-payment her debt would be sent to a debt collection center and that a lien could be placed on her Social Security Disability Insurance benefit, her sole income source.

28. B.R. went to the law office, called, e-mailed and texted Mr. Crittenden repeatedly. His responses were infrequent and were limited to his saying, "I will take care of it" and "not to worry."

29. In early April, Mr. Crittenden told B.R. that there was a check in the amount of $5,000 at his office for her to pick up. Mr. Crittenden did not tell her anything more.

30. In trying to avert a referral to a debt collection center and a lien on her SSDI benefit, B.R. wrote the Center for Medicare and Medicaid Services about the delinquent debt. She stated, "I have to assume that the settlement funds that were supposed to go to pay this amount do exist but I have no idea where they are & Mr. Crittenden will not communicate with me regarding any aspect of this case."

31. Due to her inability to get Mr. Crittenden to advocate on her behalf, B.R. tried to resolve the Medicare claim by contacting the Medicare Benefits Coordination & Recovery Center (BCRC), the constituent relations contact in Senator Lisa Murkowski's office, and the Alaska State Health Insurance Assistance Program (SHIP) office.

32. On August 2, 2023, a BCRC case analyst wrote B.R. that she needed to provide information about the amount for attorney fees and costs.

33. On August 10, 2023, a Medicare Counselor wrote Mr. Crittenden asking for itemization from the insurance company detailing the amount of the settlement and an itemization of his attorney fees and costs to resolve B.R.s' claim. He did not respond.

34.     On August 16, 2023, B.R. sent a cashier's check in the amount of $5,000 to the Department of the US Treasury. She also sent a personal check in the amount of $927.22 to the Department of the US Treasury.

35.     On August 24, 2023, B.R. wrote Medicare to appeal the grant of a partial waiver. In her letter she confirmed that she had made efforts to learn the final amount of her settlement and the fees Mr. Crittenden claimed. She said her certified letter to Mr. Crittenden was not delivered as no one was at the office to accept it. She also explained the difficulty she has had in communicating with Mr. Crittenden.

36.     B.R. attempted to meet with Mr. Crittenden three times over the summer. Her frustration was palpable when he cancelled previously scheduled meetings. She wrote:

> He can get away with scheduling meetings & then just cancel by saying he "didn't sleep well last night"? What about me? I've lost tons & tons of sleep over this. He could have completed this case in less than 50 minutes yet his actions have forced numerous people to spend LOT's of time trying to assist me.

**Count Three**
***Neglect***

37.     Mr. Crittenden failed to advocate for his client on the issue of reimbursable liens for accident-related treatments. He failed to promptly satisfy Medicare liens, allowing interest to accrue and his client's Social Security Disability payments to be threatened. He failed to answer correspondence from Medicare and failed to provide information that would allow resolution of his client's matter.

**Count Four**
***ARPC 1.4 Communication***

38.     Mr. Crittenden violated ARPC 1.4 by failing to communicate with his client despite multiple efforts by B.R. to get information from him.

**Count Five**
***Safekeeping Property***

39.     Upon receipt of the settlement monies, Mr. Crittenden failed to distribute the monies promptly to B.R. and Medicare in violation of ARPC 1.15(d).

**Count Six**
***Terminating the Representation***

40.     ARPC 1.16(a)(2) requires a lawyer to withdraw from representation of a client if "(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client."

41.     Mr. Crittenden violated ARPC 1.16(a)(2) when he failed to withdraw from representation when health and family matters interfered with his ability to bring his client's claims to timely resolution.

**L.L. v. Crittenden, ABA File No. 2023D054**

42.     Complainant L.L. was injured in a December 25, 2021 automobile accident. She hired Mr. Crittenden on February 9, 2022 to pursue a personal injury claim.

43.     On November 29, 2022, State Farm Insurance Company paid $57,841.49 in settlement of L.L.'s liability claim against the insured driver.  State Farm sent the payment to the Law Office of Benjamin Crittenden in trust for L.L.

44.     The $57,841.49 check was deposited in Mr. Crittenden's attorney trust account on December 6, 2022.

45.     On January 23, 2023, The Hartford Insurance Company sent a $50,000 check to the Law Office of Ben Crittenden in settlement of L.L.'s UIM claims.

46.     The Hartford Insurance Company notified Mr. Crittenden of his legal obligation to protect certain outstanding liens and reminded him of his agreement to set aside sufficient funds in an escrow account to satisfy the liens.

47.     After L.L. threatened to file a Bar grievance, the Law Office of Ben Crittenden made a wire transfer in the amount of $5,000 to L.L.'s account on January 30, 2023.

48.     On February 16, 2023, the Law Office of Ben Crittenden made a wire transfer in the amount of $5,000 to L.L.'s account.

49.     On April 19, 2023, L.L. filed a bar complaint against Mr. Crittenden, claiming he didn't provide her information about disbursements and he didn't pay her medical bills from the settlement proceeds as she understood he would do.

50.     Bar Counsel opened an investigation on April 24, 2023.

51.     On July 6, 2023, the Center for Medicare and Medicaid Services (CMS) sent L.L. a notice of a past due debt in the amount of $2,997.22, a debt that L.L. alleged Mr. Crittenden should have satisfied when he received monies from the Hartford Insurance Company.

**Count Seven**
*<u>Neglect</u>*

52.     Mr. Crittenden violated ARPC 1.3 when he failed to distribute settlement monies to Medicare to satisfy the outstanding lien and to take other steps to resolve the matter on his client's behalf.

**Count Eight**
*<u>Communication</u>*

53.      Mr. Crittenden violated ARPC 1.4(a) when he did not respond to his client's requests for information until L.L. threatened to file a bar complaint. Mr. Crittenden placated L.L by telling her "Medicare is fine" when he knew Medicare remained unpaid.

**Count Nine**
*<u>Safekeeping Property</u>*

54.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly distribute monies owed to Medicare under a lien and to distribute monies owed to L.L.

55.     He violated ARPC 1.15(d) when he failed to render a full accounting of funds that had been in his possession.

**C.T. v. Crittenden, ABA File No. 2023D056**

56.     Complainant C.T. hired Mr. Crittenden in January 2019 to help settle a case with Progressive Insurance after its insured driver injured her in a car accident.

57.     On January 10, 2019, Mr. Crittenden filed a complaint in *C.T. v. Shelton*.

58.     On June 18, 2019, the court dismissed the case for lack of service.

59.     On July 8, 2019, plaintiff moved to reopen the case, a motion that the court granted on July 9, 2019.

60.     Attorney Rebecca Lindemann entered her appearance for defendant on November 19, 2019.

61.     Ms. Lindemann deposed C.T. on September 3, 2020.

62.     Following the deposition, the parties had an opportunity to settle, but Mr. Crittenden was described as "missing in action."

63.     Mr. Crittenden e-mailed defense counsel on October 29, 2020 to explain his health issues and to apologize. That was the last written communication that Ms. Lindemann received.

64.     On March 23, 2022, C.T. e-mailed Mr. Crittenden that her "last email in January was after not hearing from [Mr. Crittenden] for six (6) months and one (1) year before that."

65.     C.T. notified Mr. Crittenden that she planned to pick up her file and find another attorney to resolve her case.

66.     Another attorney guided C.T. through the process and the parties settled for $14,732.10. Defense counsel said this was the amount that could have resolved the matter following the C.T. deposition. She expressed frustration that it took three years to settle an uncomplicated personal injury case.

67.     C.T. filed a grievance against Mr. Crittenden on May 5, 2023. Bar Counsel opened the matter for investigation on May 22, 2023.

**Count Ten**
*Neglect*

68.     Mr. Crittenden violated ARPC 1.3 for failure to diligently prosecute the lawsuit. His lack of action resulted in the case being dismissed for lack of service. After the dismissal was set aside, he took little to no action when the matter was ripe for resolution.

**Count Eleven**
*Communication*

69.     C.T. was unsuccessful in reaching Mr. Crittenden to discuss her case. Mr. Crittenden violated ARPC 1.4(a) when he failed to respond to reasonable requests for information.

**Count Twelve**
*Termination of Representation*

70. Mr. Crittenden violated ARPC 1.16(a)(2) when he failed to withdraw after his health problems impaired his ability to competently represent his client.

**Teaford v. Crittenden, ABA File No. 2023D057**

71. Complainant Christina Teaford is a magistrate judge in Seward, Alaska. Her first contact with Mr. Crittenden was on July 21, 2022 because he represented E.H. in *State v. E.H.*, a DUI case.

72. Magistrate Judge Teaford alleged that Mr. Crittenden "never worked this case." For two and one half years he only requested continuances and never filed a single motion although he claimed he was going to file a motion to suppress.

73. The State provided discovery and made offers in 2021, 2022 and 2023. Responses were not forthcoming.

74. As of May 11, 2023, when Magistrate Judge Teaford filed her Bar complaint, Mr. Crittenden had failed to appear at six court hearings.

75. When neither Mr. Crittenden nor his client appeared at an April hearing, a bench warrant was issued. When Mr. Crittenden failed to appear for a May 9, 2023, pre-trial conference, the court set a representation hearing for May 25, 2023 to address concerns that Mr. Crittenden was not providing representation to his client.

76. On May 22, 2023, Bar Counsel opened the complaint for investigation.

77.     At the representation hearing, Mr. Crittenden explained that he was going through some serious health issues and transferring several cases to other counsel. Mr. Crittenden remained as counsel for E.H.

78.     In early July the case was reassigned to Judge Martin Fallon and the State moved to set deadlines.

79.     On July 27, 2023, Mr. Crittenden filed a motion and memorandum to suppress evidence. He claimed that he prepared extensively for the evidentiary hearing.

80.     Mr. Crittenden alleged that he had an autoimmune attack a few days before the hearing that put him in bed and unable to effectively represent his client at the evidentiary hearing. Mr. Crittenden waited until the day of the evidentiary hearing to ask for a continuance, hoping that he would feel better.

81.     On August 21, 2023, Mr. Crittenden moved on an expedited basis to continue the evidentiary hearing which the court granted on the same day. The motion was later denied and Mr. Crittenden was dismissed as counsel after being placed on disability.

**Count Thirteen**
*Neglect*

82.     Mr. Crittenden violated ARPC 1.3 when he failed to file motions, respond to offers from the State, and appear at multiple court hearings. His failure to appear at a hearing resulted in a bench warrant being issued against his client.

**Count Fourteen**
*Expediting Litigation*

83.     ARPC 3.2 requires a lawyer "to make reasonable efforts to expedite litigation consistent with the interests of the client," an obligation that Mr. Crittenden failed to meet.

**Count Fifteen**
*Termination of Representation*

84.     Mr. Crittenden violated ARPC 1.16(a)(2) when he failed to withdraw after his health problems impaired his ability to effectively represent his client.

**S.S. v. Crittenden, ABA File No. 2023D073**

85.     Complainant S.S. was injured on June 27, 2015 when his car was rear-ended. He accumulated many outstanding bills and hired Mr. Crittenden for help.

86.     Mr. Crittenden filed a complaint for personal injury on June 21, 2017.  On March 23, 2020, the parties filed a stipulation and order for dismissal with prejudice.

87.     S.S. understood all his bills would be paid before he received any payments. There was an outstanding amount owed to Sports & Spinal Chiropractic and a few bills had gone into collection.

88.     On April 4, 2023, S.S. received a demand from a medical subrogation agent for repayment of $6,201.63 due to overpayments of short-term disability payments.  The agent was aware that a settlement payment had been made to Mr. Crittenden's law office. S.S. alleged that Mr. Crittenden did not satisfy the liens upon receipt of the settlement.

89.     S.S. filed a grievance against Mr. Crittenden on May 23, 2023.

90.     Bar Counsel opened the matter for investigation on June 20, 2023.

**Count Sixteen**
_**Communication**_

91.     Mr. Crittenden violated ARPC 1.4 by failing to keep his client informed about the status of his case.  When S.S. learned that liens had not been satisfied, he had questions that Mr. Crittenden never answered.

**Count Seventeen**
_**Safekeeping Property**_

92.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly notify S.S. and third parties that Mr. Crittenden had received funds; failed to deliver the funds to the lienholders and S.S.; and, failed to render a full accounting upon S.S.'s request.

**ABA (BC IFN) v. Crittenden, ABA File No. 2023D085**

93.     On May 25, 2023, Bar Counsel received notification that Mr. Crittenden was overdrawn on his IOLTA account.  The notice indicates that Mr. Crittenden wrote a check in the amount of $6,208.20, leaving a negative account balance of $4,046.75.

94.     On June 20, 2023, Bar Counsel opened the matter for investigation.  No satisfactory explanation for the overdraft of the IOLTA account has been provided.

**Count Eighteen**
_**Safekeeping Property**_

95.     A lawyer should hold the property of clients with the care required of a professional fiduciary.

96. ARPC 1.15(a) in part requires a lawyer to hold client funds in a separate account and to maintain complete records of the account funds for a period of five years after the termination of the representation.

97. Mr. Crittenden violated Rule 1.15(a) by failing to maintain proper trust account records and to perform reconciliations so that shortfalls in his trust account would not happen.

**P.A. v. Crittenden, ABA File No. 2023D089**

98. Complainant P.A. filed a grievance on June 6, 2023, against Mr. Crittenden. She alleged that she hired Mr. Crittenden on July 27, 2022 to prosecute her personal injury claims for damages she sustained on March 30, 2021. No court case was filed.

99. P.A. settled her claims with GEICO Insurance Co. for $20,000, and signed a settlement agreement on March 29, 2023.

100. An office paralegal e-mailed P.A. on April 26, 2023, telling P.A. that she should receive the settlement monies shortly.

101. When P.A. did not receive any funds she left voicemail messages with Mr. Crittenden's office. P.A. heard nothing further from Mr. Crittenden about the disbursement of her settlement proceeds.

102. P.A. has not received any monies from the Law Office of Ben Crittenden.

103. Bar Counsel opened this matter for investigation on June 20, 2023. Mr. Crittenden has not responded to Bar Counsel's request for information.

## Count Nineteen
### *Communication*

104. Mr. Crittenden violated ARPC 1.4 when he failed to respond to P.A.'s requests for information about the resolution of her case and settlement.

## Count Twenty
### *Safekeeping Property*

105. Mr. Crittenden violated Rule 1.15(d) when he failed to distribute to P.A. settlement monies to which she was entitled and when he failed to account for funds in his possession.

## T.W. v. Crittenden, ABA File No. 2023D090

106. T.W. and her daughter, M.J., were injured in a car accident in February 2020. In March 2020, T.W. hired Mr. Crittenden to represent her and her daughter. M.J.'s case settled in 2020 and T.W.'s case settled in 2021.

107. T.W. alleged that Mr. Crittenden distributed settlement monies in increments because he said the bank would only allow him to wire so much a month. T.W. alleged that despite multiple calls, e-mails and texts requesting assistance, he seldom followed through on his promises to distribute settlement monies.

108. T.W. texted Mr. Crittenden on May 31, 2022, "My family and I are in a serious situation again. We are having to move out and also I need to pay a half month's

rent here. Once we move from here I need funding for a place to stay and then money for a first and last months [sic] deposit and money to be able to get my utilities turned on. I am in a very bad situation as far as my health since the accident." She ended her text asking, "Can you please update me asap?"

109. On June 2, 2022, Mr. Crittenden responded, "I am in San Francisco for doctor appointments. I don't have my work computer with me, but I think I can do a disbursement from my IPad. I'll try and do it tomorrow. Can you send me again your daughter's bank information and I will wire her her settlement money." No evidence that M.J. received the wired money has been provided.

110. T.W. texted Mr. Crittenden on June 3, 6, and 7, 2022, each time asking for a follow-up, and reminding him that she needed rent money and her landlord charged $50 each day for a late fee. She heard nothing back from her attorney

111. On June 8, 2022, T.W. texted, "Hello Ben, I really am in a hard place. I am late on rent and I have to move out on the 16th. Is there any way you can help?"

112. Mr. Crittenden responded that evening by text. "Sent you $1K. I am flying home tomorrow. My health issues have been crazy. Please text me tomorrow."

113. T.W. texted on June 9 and 10, 2022 with no substantive response. On June 13, 2022, Mr. Crittenden texted her, "Since you contacted Medicaid they provided me with a new lien that I have to work down. I will try and do that ASAP. I have surgery coming up soon."

114.	Mr. Crittenden texted T.W. that he would e-mail the new Medicaid information.  She told him multiple times that she hadn't received the information.  On June 24, 2022, she asked for a time frame, stating, "I still haven't received the charges from Medicaid in my email.  I've literally been sleeping in my car and rest stops with my family."

115.	On July 5, 2022, T.W. texted, "Can you tell me if we settle with where we are at, how much the payout would be?  I am really in tough times as well."

116.	On November 7, 2022, T.W. texted Mr. Crittenden "to see where things were at?  I understand that you've been going through family and health issues, and I send my empathy to you.  I am really going through some domestic issues myself, but it's not so safe and I don't have the funds to leave.  Is there any way you can help me out with an update?  I'm so sorry to bother but it's pretty serious."

117.	On December 9, 2022, T.W. told Mr. Crittenden she needed money to attend out-of-state funeral services for her recently deceased sister and to help with funeral costs.  She offered to provide hospital and other information so that he would know that she wasn't lying.  She texted again on December 12 and 19 asking for help so she could get to Arizona to lay her sister to rest.

118.	Mr. Crittenden texted on December 20, 2022 that he would wire her $5,000.  No evidence that the money was wired to T.W. has been provided.

119.     In May 2023, T.W. again texted, seeking to arrange a call and requesting information.  On May 17, 2023, Mr. Crittenden texted: "Really busy day. I will get back to you tomorrow. Please don't file a complaint. I will call tomorrow."  He later texted that he was putting together the disbursements and would e-mail the information that day.

120.     Mr. Crittenden e-mailed a disbursement sheet which M.J. signed with an electronic signature on May 19, 2023.  The accounting showed a settlement in the amount of $13,750.  After attorney fees, costs and a Medicaid lien in the amount of $487.30, M.J. was to receive $8,330.17.  The disbursement did not account for monies that Mr. Crittenden earlier advanced to her.  Although disbursement information was provided, no money was sent.

121.     On May 22, 2023, T.W. asked Mr. Crittenden when he would send the money.  He explained that he got really sick that weekend.  He requested bank information so that he could wire it.

122.     On May 24, 2023, T.W. wrote that she wanted to know where things stood in her case.  She also texted that her daughter M.J. hadn't received her settlement yet.  In response Mr. Crittenden committed to wire money that week and to send a letter to Medicaid and copy T.W. with it.

123.     On May 26, 2023, T.W. texted that she had heard nothing from Mr. Crittenden and had not received a letter to Medicaid.  She asked if he was still negotiating with them.

124.    On May 26, 2023, Mr. Crittenden texted that he wired $2,000 to M.J.  He explained that the person he dealt with at Medicaid had taken a short holiday.

125.    T.W. told Mr. Crittenden the bank had not received the wired funds and asked if her daughter would get her settlement.  She asked if the funds were no longer available.

126.    Mr. Crittenden responded that he wired the money that day and wasn't sure what happened.  He renewed his requested that she not file anything with the Bar.

127.    Mr. Crittenden continued a pattern of promising to call T.W. and then cancelling for a variety of reasons.

128.    On May 26, 2023, T.W. texted, "hi Ben, I just wanted to let you know that you have forced myself and M.J. to go ahead and file cases with the Alaska Bar Association.  We have begged you over and over to communicate with us and everyday it is a different excuse as to why you have not been able to keep your word to us.  It is unfair practice to us.  We hired you to do a job and you have dragged up [sic] through the mud repeatedly."

129.    On June 13, 2023, Mr. Crittenden e-mailed that he believed that he had wired the money that day and he wasn't sure what happened before. Mr. Crittenden told T.W. that the bank limited how much he could wire her in a month.

130.    On June 20, 2023, Bar Counsel opened the matter for investigation.

**Count Twenty-One**
*Communication*

131.     Over a period of months, T.W. contacted Mr. Crittenden to ask about the status of her case and to learn about the distribution of funds.  Mr. Crittenden often did not respond and when he responded he seldom addressed T.W.'s concerns, in violation of ARPC 1.4(a).

**Count Twenty-Two**
**_Safekeeping Property_**

132.     Mr. Crittenden violated ARPC 1.15(d) when he failed to provide a full accounting of monies paid in settlement of the T.W. and M.J. claims and when he failed to distribute funds promptly to his clients and medical providers who had liens against the settlements.

**Count Twenty-Three**
**_Termination of Representation_**

133.      Mr. Crittenden violated ARPC 1.16(a)(2) when he failed to withdraw after his health problems impaired his ability to competently [represent] his clients.

**ABA (Court Referral) (Judge Nesbett)  ABA File No. 2023D136**

134.      On August 30, 2023, District Court Judge David A. Nesbett ordered Mr. Crittenden to show cause why he should not be held in contempt for failure to attend three consecutive Change of Plea hearings in _Municipality of Anchorage v. J.P.C._

135.      Mr. Crittenden did not respond to the court's Order within the time limits set by Judge Nesbett.

136.     On September 19, 2023, District Court Judge Patrick Hanley informed Bar Counsel that Mr. Crittenden did not respond to the show cause order and did not appear at the September 11, 2023 hearing in the *J.P.C.* matter set by the court.

137.     On September 11, 2023, the court set a hearing on September 17, 2023, and distributed a hearing notice.

138.     Mr. Crittenden did not appear at the hearing.  The court called his office and no one answered.  The court set an order to show cause hearing for September 26, 2023.  Mr. Crittenden did not appear at that hearing and a contempt order issued.

139.     On October 20, 2023, Mr. Crittenden filed a response to the contempt order.  Mr. Crittenden explained that he experienced a series of debilitating autoimmune attacks during August and September and was unaware of the court hearings.  He advised that he planned to go on disability status with the Bar Association soon.

**Count Twenty-Four**
*Neglect*

140.     Mr. Crittenden missed multiple change of plea hearings and hearings to show cause in violation of ARPC 1.3.

**Count Twenty-Five**
*Expediting Litigation*

141.     By failing to attend court hearings and to meet court-imposed deadlines, Mr. Crittenden failed to make reasonable efforts to expedite litigation in violation of ARPC 3.2.

**Count Twenty-Six**
*Fairness to Opposing Party and Counsel*

142.    ARPC 3.4(c) provides:

> (c) A lawyer shall not knowingly violate or disobey an order of a tribunal or an obligation under the rules of a tribunal, except for an open refusal based on an assertion that the order is invalid or that no valid obligation exists.

143.    Mr. Crittenden violated ARPC 3.4(c) when he failed to respond to orders to show cause issued by Judge Nesbett and Judge Hanley.

**J.S. v. Crittenden, ABA File No. 2023D141**

144.    On November 30, 2019, Complainant J.S. received a neck and traumatic brain injury when a car failed to stop at an intersection and struck his vehicle.  J.S. hired Mr. Crittenden on February 14, 2020, to prosecute all claims he had against responsible parties.

145.    J.S. filed a grievance against Mr. Crittenden on September 26, 2023.  The Bar opened an investigation on October 2, 2023.

146.    J.S. complained that after May 2020, communication became non-existent. Mr. Crittenden did not respond to phone calls, e-mail or texts which Mr. Crittenden alleged became increasingly abusive.

147.    J.S. said that Mr. Crittenden failed to research the consequences of a traumatic brain injury or seek expert advice to help him.  There was little preparation before J.S. was deposed.

148.     J.S. contended that Mr. Crittenden failed to inform him that Medicaid would recover $12,600 from the $50,000 policy limits being offered.

149.     After J.S. settled his claims for policy limits of $50,000, Mr. Crittenden failed to resolve outstanding liens and failed to satisfy a lien owed to FastCashLegal for $2,060 plus interest, a lien against any settlement proceeds that Mr. Crittenden acknowledged on February 12, 2022.

150.     Mr. Crittenden failed to promptly notify J.S. that the settlement check arrived at his law office.  Six months after Mr. Crittenden received the settlement check, J.S. was paid $15,300 without any explanation or accounting of how money was distributed.

**Count Twenty-Seven**
***Communication***

151.     Mr. Crittenden violated ARPC 1.4 when he failed to keep J.S. informed about the status of his case and failed to respond to reasonable requests for information.

**Count Twenty-Eight**
***Safekeeping Property***

152.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly deliver settlement funds to J.S.  He violated ARPC 1.15(d) when he failed to render a full accounting regarding the funds.

**R.H. v. Crittenden, ABA File No. 2023D165**

153.     Complainant R.H. hired Mr. Crittenden on November 19, 2020, to help her collect damages for injuries she sustained on November 13, 2020 in her "no fault" accident.

154. R.H. settled her claims with GEICO General Insurance Company for $57,877.09 in January 2021. On January 28, 2021, Mr. Crittenden sent her a Disbursement Statement which stated that his fees totaled $19,678.21 and that costs, primarily for medical records, were waived. The disbursement statement informed R.H. that her net recovery was $37,718.02.

155. R.H. did not receive her net recovery upon settlement of her claims against GEICO. She reported that Mr. Crittenden gave her $10,000 to "hold [her] over."

156. R.H. understood that Mr. Crittenden was pursuing additional monies from her underinsured motorist claim with State Farm. In March 2022, Mr. Crittenden told her that he might have to sue State Farm as it was "low balling the settlement."

157. Mr. Crittenden has not contacted her since the March 2022 conversation. He has not responded to any of her calls, e-mails, or other attempts to speak with him.

158. R.H. has not received any additional monies after the $10,000 partial distribution of her settlement. Additionally, she reported that she had some judgments against her credit because Mr. Crittenden did not pay some expenses from the accident.

159. The Bar opened an investigation on November 14, 2023.

**Count Twenty-Nine**
*Communication*

160.     Mr. Crittenden violated ARPC 1.4 when he failed to keep R.H. informed about the status of her underinsured motorist claims and failed to respond after March 2022 to multiple efforts to contact him for information.

**Count Thirty**
*Safekeeping Property*

161.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly deliver the remainder of settlement funds owed to R.H.

**V.A. v. Crittenden, ABA File No. 2023D188**

162.     Complainant V.A. filed a grievance against Mr. Crittenden on November 28, 2023.  The Bar opened an investigation on December 21, 2023.

163.     V.A. hired Mr. Crittenden on June 11, 2019, to represent her in a criminal misdemeanor driving offense.  She alleged that he failed to properly represent her and failed to communicate.

164.     Starting in 2020 proceedings were delayed due to COVID-19, but her case was back on track by August 2023.

165.     V.A. alleged that Mr. Crittenden failed in several regards.  Since August 2023 she said he was non-responsive to 35 e-mail, was non-responsive to nine voicemails to his office, and non-responsive to 36 text messages.  He cancelled two office

appointments, one after she had already arrived at his office. He failed to appear in person at any hearing and failed to call in to three hearings.

166. On August 10, 2023, the court issued an arrest warrant for V.A. because Mr. Crittenden failed to appear at the change of plea hearing. The warrant was not quashed until August 22, 2023.

167. On November 30, 2023, V.A. requested the court to appoint new counsel. Denali Law Group entered its appearance on December 12, 2023 and Mr. Crittenden withdrew on December 28, 2023.

**Count Thirty-One**
**_Neglect_**

168. Mr. Crittenden violated ARPC 1.3 when he failed to appear at hearings, failed to file motions when promised, and failed to act diligently on his client's behalf.

**Count Thirty-Two**
**_Communication_**

169. Mr. Crittenden violated ARPC 1.4(a) when he did not respond to his client's requests for information or keep her informed about the status of her matter.

**D.A. v. Crittenden, ABA File No. 2023D202**

170. Complainant D.A. hired Mr. Crittenden on June 8, 2020 to seek damages for injuries D.A. sustained in an automobile accident. Mr. Crittenden filed a complaint in superior court on June 6, 2022.

171. On August 9, 2023 the parties filed a stipulation for dismissal with prejudice. D.A. alleged a settlement check in the amount of $70,744.94 was deposited into Mr. Crittenden's trust account on August 9, 2023.

172. D.A. complained that distribution of the settlement funds was unnecessarily delayed. He texted Mr. Crittenden about the delay. Mr. Crittenden did not respond until about a month and a half later when he asked D.A. to provide bank information so that Mr. Crittenden could wire transfer money to D.A. No money was deposited into D.A.'s account or paid directly to D.A.

173. D.A. alleged, "Mr. Crittenden has not responded to any of my messages inquiring about the status of the settlement funds. Based on his behavior and text messages, I suspect that he is lying and trying to keep the settlement funds for himself."

174. To date D.A. has not received monies owed to him.

**Count Thirty-Three**
*Communication*

175. Under Rule 1.4, a lawyer has a duty to promptly comply with reasonable requests for information and to keep a client reasonably informed about the status of the matter. Mr. Crittenden violated ARPC 1.4(a) by failing to answer texts from D.A. and by cancelling meetings with him when his client was trying to find out why settlement funds had not yet been disbursed.

**Count Thirty-Four**
*Safekeeping Property*

176.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly deliver the settlement funds owed to D.A.

**M.H. v. Crittenden, ABA File No. 2024D043**

177.     M.H. hired Mr. Crittenden in January 2019 to assist her with resolving claims for injuries sustained in an automobile accident.

178.     On October 17, 2023, M.H. signed a release for the sum of $34,500.  Mr. Crittenden agreed that M.H. would recover $30,500 from the settlement and he would receive $4,000.

179.     On October 30, 2023, Mr. Crittenden wired $15,000 into M.H.'s bank account.  On October 31, 2023, Mr. Crittenden wired $1,000 into M.H.'s bank account.

180.     Mr. Crittenden has not paid M.H. the remainder of the money to which she is entitled.

**Count Thirty-Five**
*Safekeeping Property*

181.     Mr. Crittenden violated ARPC 1.15(d) when he failed to promptly deliver all settlement funds to which M.H. is entitled.

182.     Mr. Crittenden was transferred to disability inactive status on December 19, 2023.  The Superior Court appointed attorney Scott Dattan to serve as trustee counsel on December 28, 2023.  Mr. Dattan's powers and duties are set out in Alaska Bar Rule 31.

183.     As trustee, Mr. Dattan has the duty under Bar Rule 31(b)(5) to render an accounting of office, trust or other bank accounts.

184.     Bar Rule 31(d) governs the disposition of assets.  It provides that any monies "remaining after the completion of the client matters, and after compensation of trustee counsel, will be returned to the unavailable attorney."

185.     On March 29, 2024, Wells Fargo Bank provided Mr. Dattan a copy of the January IOLTA account statement.  The beginning balance on the client trust account on January 1, 2024 was $10,000.97.  Starting on January 2, 2024 and ending on January 26, 2024, Mr. Crittenden made seventeen on-line withdrawals, taking a total of $10,000 from the client trust account.  The ending balance on January 31, 2024 of the IOLTA account was $0.97.

186.     Trustee Counsel had no notice that Mr. Crittenden was depleting the trust account through a series of unauthorized incremental withdrawals until only $0.97 remained in the account.

**Count Thirty-Six**

*Safekeeping Property*

187.     ARPC 1.15(c) states: "A lawyer shall deposit funds received for future fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

188.     Mr. Crittenden violated ARPC 1.15(c) when he engaged in periodic and purposeful withdrawal of funds from the client trust account without notice to trustee counsel and without a showing of entitlement to the funds he removed.

## SANCTION ANALYSIS

189.     The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986), and reported decisions of the Alaska Supreme Court, govern the sanctions for Respondent's misconduct.

190.     Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

> (a) the duty violated;
> (b) the lawyer's mental state;
> (c) the actual or potential injury caused by the lawyer's misconduct; and
> (d) the existence of aggravating or mitigating factors.

191.     These factors are addressed in a three-part methodology:  1) determine the first three factors; 2) determine recommended sanction; and 3) determine whether

aggregating or mitigating circumstances exist. *In Re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

### Part 1: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

### *A. Duty Violated*

192.     Mr. Crittenden breached duties he owed to his clients: he failed to act diligently, he failed to keep clients informed, failed to account for client funds, and failed to deliver funds promptly upon client request. *See* ABA Standards §§ 4.4 and 4.1. Mr. Crittenden breached duties owed to the public when he removed and kept client money, acts that reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects. *See* ABA Standards §5.0. Mr. Crittenden violated duties owed to the legal system when he failed to appear at hearings and failed to respond to orders to show cause. *See* ABA Standards § 6.2. Mr. Crittenden violated duties owed to the profession when he failed to withdraw after his health and personal issues interfered with his ability to represent clients diligently and competently. *See* ABA Standards §7.0.

### *B. Mental State*

193.     Under the ABA standards:

" 'Intent' is the conscious objective or purpose to accomplish a particular result."

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

" 'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

194.    Under the ABA Standards, the most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.

195.    The parties agree that a Hearing Committee initially could find that Mr. Crittenden acted knowingly when he failed to act with reasonable diligence when representing clients and when he failed to return client calls, e-mails and texts. But a Hearing Committee could find that Mr. Crittenden's routine requests for continuances in court proceedings and non-responsiveness to clients became an intentional means to address his lack of preparedness and his overall lack of diligence.

196.    A Hearing Committee could find that Mr. Crittenden's initial failure to account was knowing, but his continued failure to promptly turn over funds and to account became intentional to hide his mishandling of clients' money and money owed to third parties.

197.    The parties agree that Mr. Crittenden intentionally failed to respond to clients' requests for accountings because he knew accurate responses would reveal that he had failed to maintain accurate records and that he had mishandled client funds.

198. The parties agree that Mr. Crittenden acted knowingly when he failed to withdraw from representation when his physical or mental condition materially impaired his ability to represent his clients.

### C. Actual or Potential Injury

199. Clients experienced stress and anxiety from their inability to speak with Mr. Crittenden, particularly when they faced mounting debt and Mr. Crittenden would not turn over settlement funds or account to clients. Clients were frustrated by Mr. Crittenden's messages that promised action but delivered none. They were frustrated by his litany of excuses when they were experiencing their own hardships. Clients never received funds to which they were entitled.

200. The legal system is harmed when an attorney violates a fundamental duty as an officer of the court to appear at hearings and to be prepared so that matters can advance toward resolution rather than be continued. Excessive delays interfered with the adjudicatory process and the orderly resolution of issues by the courts.

201. Mr. Crittenden caused harm to the profession when he failed to withdraw his representation after his health issues affected his ability to represent his clients diligently.

### Part 2: Recommended Sanction under ABA Standards

202. ABA Standards §4.1 discusses appropriate sanctions in cases involving the failure to preserve client property. (Rule 1.15) Standard 4.11 recommends disbarment when "a lawyer knowingly converts client property and causes injury or potential injury to

a client." Mr. Crittenden was unable to show that he established proper accounting procedures, maintained a balanced client trust account, and turned over client funds promptly. Mr. Crittenden agrees that he used client funds for his own benefit. He used client monies to pay office and personal expenses. The parties agree that a Hearing Committee could find that compelling mitigating circumstances do not justify a lesser sanction than disbarment.

203. ABA Standards §4.4 addresses sanctions where a lawyer fails to act with reasonable diligence and promptness in representing a client, including cases in which lawyers do not communicate with their clients.

204. Section 4.41 states that disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

205. Section 4.42 recommends suspension when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

206. The parties agree that a Hearing Committee could determine that Mr. Crittenden's long pattern of client neglect – his failure to act promptly and diligently and

his failure to communicate – caused his clients serious injury or potentially serious injury and warrants disbarment.

207. ABA Standards §7.0 addresses sanctions for violations of duties owed to the profession, such as failure to properly withdraw from representation. Section 7.3 provides that a reprimand is generally appropriate "when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

208. The parties agree that Mr. Crittenden's negligent failure to withdraw from representation of clients when his primary focus was on his own issues of health and family to his clients' detriment warrants a reprimand.

## DISCIPLINARY SANCTION

209. Based on a review of the ABA Standards, the misconduct, without application of aggravating and mitigating factors, supports disbarment from the practice of law for neglect and the failure to safekeep client funds, and using client monies for his own benefit. The lesser sanction recommendation of reprimand for failure to withdraw is subsumed into the disbarment sanction recommendation.

### Part 3: Aggravating and Mitigating Factors

210. ABA Standards §9.0 sets out factors that may be considered in aggravation and mitigation.

211. The following aggravating factors may be considered in deciding what sanction to impose:

- Dishonest or selfish motive (9.22(a));
- A pattern of misconduct (9.22(c));
- Multiple offenses (9.22(d)); and
- Substantial experience in the practice of law (9.22(i)) (Mr. Crittenden was admitted to practice in 20[05]),

212. The following mitigating factors may be considered in deciding what sanction to impose.

- Absence of a prior disciplinary record (9.32(a));
- Personal or emotional problems (9.32(c)) (Mr. Crittenden has three children and had been married for 11 years when his wife abruptly announced during a family visit in Pennsylvania that she was filing for divorce and remaining with their children in Pennsylvania. Although his wife and children have returned to Alaska, Mr. Crittenden has struggled with the state of the marriage.);
- Physical or mental disability or impairment (9.32(h)) (In the spring and summer of 2022, Mr. Crittenden received conflicting diagnoses regarding whether he had cancer, a severe bone infection or something not yet determined. Mr. Crittenden consulted with medical providers in Anchorage, San Francisco and Seattle and had diagnostic procedures and surgeries performed. Although cancer was ruled out, he continued to feel poorly. He experienced vestibular vertigo which interfered with work and personal life routines. A personalized health plan and therapeutic exercises improved his episodes of vertigo. Mr. Crittenden also has an autoimmune condition and has been subject to debilitating autoimmune attacks which led to his decision to go on disability status).

213. The parties agree that each disciplinary case is decided upon its own particular set of facts, including the proper balancing of aggravating and mitigating

circumstances. Here the mitigating factors help to offset several aggravating factors, but not sufficiently to merit reduction of a presumptive sanction of disbarment.

## ALASKA CASES

214. After considering the ABA Standards, sanctions are evaluated in light of other cases and authorities. Mr. Crittenden and Bar Counsel have considered the following reported and unreported cases in which professional discipline was imposed by the Alaska Supreme Court for violations such as those at issue here: *In re Collins,* Supreme Court No. 16623 (Amended Order No. 99 - August 23, 2007) (disbarment for conversion of client funds; criminal conduct adversely reflecting on fitness to practice; dishonesty; failure to respond to a disciplinary investigation; negligence; failure to communicate; violation of suspension order; unauthorized practice of law); *In re Acker*, Supreme Court No. 14024 (Order 12/9/10) (disbarment for failure to provide competent and diligent representation, lack of timely and reasonable communication, failure to charge reasonable fees pursuant to written fee agreements, failure to safekeep client property by commingling and periodic misappropriation, act with candor to a tribunal, respect the rights of a third person, respond to Bar and to a formal petition, sharing fees with nonlawyer, dishonesty (2 clients)); *In re Blackburn*, Supreme Court No. S-10997 (Order 04/08/03) (disbarment for neglect, failure to communicate and account, violation of court orders, dishonesty, failure to respond to Bar); *In re Gonzalez-Powell*, Supreme Court No. S-16946 (Order No. 111-June 5, 2020) (disbarment for lack of diligence, failure to keep a client reasonably informed, failure to communicate, failure to return client files; failure to decline or

terminate representation; conflict of interest; failure to expedite litigation; failure to safekeep property; false statement of material fact in connection with a disciplinary matter; lack of candor with court; conduct that reflects adversely on fitness to practice; pattern of misconduct and multiple offenses.); *In re Miles,* 339 P.3d 1009 (Alaska 2014) (disbarment for conflict of interest, failure to hold disputed funds separately, failure to promptly notify those with an interest in the funds, failure to account for the funds, failure to deliver the funds to those entitled to them and committing the criminal act of theft, misappropriation, or wrongful conversion (1 client)); *In re Cyrus*, 241 P.3d 890 (Alaska 2010) (five-year suspension, three years to serve, for failure to be competent, act with reasonable diligence and promptness, communicate, make reasonable efforts to expedite litigation, and respond to the Bar); *In re Brion,* 212 P.3d 748 (Alaska 2009) (three-year suspension, one year to serve, for neglect, failure to communicate, failure to account properly for client funds, and failure to respond to the Bar Association regarding client grievances (6 clients)). The Court later disbarred Brion for continuing lack of diligence and failure to safeguard client money. *In re Brion*, Supreme Court No. S-13722 (Amended Order 03/24/10); *In re Rice*, Supreme Court No. S-13856 (Order 08/26/11) (four-year suspension, one year stayed on conditions, for knowingly commingling his funds with client trust funds, misappropriation of client trust funds, failure to keep adequate records of client trust funds, willful failure to cooperate with bar investigation (7 clients)); *In re Rosenbaum,* Supreme Court No. S-15604 (Order 7/9/2015) (42-month suspension for failure to keep clients informed, to disclose the absence of malpractice insurance, to refund unreasonable fees, to account for fees charged,

and to respond to disciplinary counsel and petition (two clients)); *In re Stepovich*, Supreme Order No.11967 (Order 09/15/06) (three-year suspension with two years to serve for failure to hold client funds in trust, failure to account and promptly deliver client funds (1 client)); *In re Albertsen*, Supreme Court No. S-17026 (Order 5/11/2018) (two-year and one day suspension for neglect, failures to communicate, to have a written fee agreement, to render a full accounting, to turn over materials promptly, and to respond to the Bar (two clients)).

## STIPULATED DISCIPLINE

215.    Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, Mr. Crittenden and Bar Counsel agree that Mr. Crittenden will accept the discipline of disbarment by the Alaska Supreme Court under Bar Rule 16(a)(1) with the following conditions:

> (a)  Mr. Crittenden should be required to pay a costs and fees assessment according to the schedule set out in Alaska Bar Rule 16(c)(3).
>
> (b)  Mr. Crittenden must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and to all clients for any fee arbitration awards that remain unpaid or that are ordered to be paid prior to seeking reinstatement.
>
> (c)  Prior to his seeking readmission to the practice of law in Alaska, Mr. Crittenden will certify to Bar Counsel that he has earned at least 15 credit hours of continuing legal education in the area of ethics, law office management and management of law office accounts.

DATED this 25th day of April, 2024, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

/s/ Philip E. Shanahan for
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

DATED this 24th day of April, 2024, at Anchorage, Alaska.

/s/ Benjamin Crittenden
Benjamin Crittenden
Respondent
Bar Member No. 0511098

DATED this 24th day of April, 2024, at Anchorage, Alaska.

/s/ Michael A. Moberly
Michael A. Moberly
Attorney for Respondent
Bar Member No. 9612073

# CONSENT OF RESPONDENT

Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that Respondent admits to the allegations set forth above.

DATED this 24th day of April, 2024, at Anchorage, Alaska.

/s/ Benjamin Crittenden
Benjamin Crittenden
Respondent
Bar Member No. 0511098

SUBSCRIBED AND SWORN to before me this 24th day of April, 2024.

/s/ Kate H. Sidro
(SEAL)      Notary Public in and for Alaska
My commission expires: 9/14/2026